**William T. GRAY, III, Appellant,**

v.

**Theisha POOLE, et al., Appellees.**

**No. 00–7130.**

United States Court of Appeals, District of Columbia Circuit.

Decided March 27, 2001.

Rehearing Denied May 17, 2001.

Robert Rigsby, Corporation Counsel, Charles Reischel, Deputy Corporation Counsel, and Mary L. Wilson, Assistant Corporation Counsel, were on the motion for summary affirmance filed by appellees Theisha Poole, et al.

Kevin C. Newsom and Kurt G. Calia were on the motion for summary affirmance filed by appellee Lisa M. Farabee.

William T. Gray, III, appearing pro se, was on the oppositions to appellees' motions for summary affirmance.

Before: GINSBURG, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

On Motions for Summary Affirmance

GARLAND, Circuit Judge:

This case poses the question whether attorneys of the District of Columbia's Office of Corporation Counsel are absolutely immune from damages under 42 U.S.C. § 1983 for their conduct in initiating and prosecuting a child neglect action. We conclude that they are and summarily affirm the district court's dismissal of a damages suit brought by a custodian charged with neglect.

I

Appellant William Thomas Gray, III was the custodian of his minor brother and the legal guardian of his brother's estate. In April 1998, the Probate Division of the District of Columbia Superior Court removed Gray as legal guardian, finding him to be "mentally ill and in need of relief from his duties." *Robertson v. Gray*, GDN 12–97, Admin. No.0057–97, slip op. at 4 (D.C.Super. Ct., Prob. Div. Apr. 30, 1998). In March of the following year, the District of Columbia instituted a separate child neglect action, charging that Gray, who was still serving as his brother's custodian, was not providing his brother with adequate care. Pet., *In re P.G.*, No. N–363–99, S.F. No. 211453 (D.C.Super. Ct., Family Div., Neglect Branch Mar. 27, 1999). Two months later, citing the decision of the Probate Division, the District amended its neglect petition to add as an additional ground that Gray lacked the mental capacity to care for his brother.

1. Farabee served in this capacity from December 1998 to June 1999, while on temporary assignment as part of the pro bono program of Covington & Burling, a District of Columbia law firm.

2. Section 1983 provides that every person who, under color of law "of any State or

Appellee Lisa M. Farabee filed and prosecuted the neglect action against Gray as part of her duties as Special Assistant Corporation Counsel for the District of Columbia.[1] At the time the neglect suit was filed, appellee Jo Anne Robinson was Acting Corporation Counsel for the District of Columbia. Appellee Theisha Poole was the social worker assigned to the neglect case by the District's Child and Family Services Agency.

In August 1999, while the neglect proceeding was pending, Gray sued Farabee, Robinson, and Poole in the United States District Court for the District of Columbia, asserting a cause of action under 42 U.S.C. § 1983.[2] Gray alleged that the defendants filed the neglect action with knowledge that it was "without a basis or cause," and that they subsequently amended the action based on "unreliable and unverified" statements of the judge in the Superior Court probate case. Compl. at 2. Gray sought $10 million in damages for unconstitutional "harassment, defamation of character, [and] libelous and slanderous statements, created by Defendants." *Id.* at 4.

In January 2000, Farabee filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that she was absolutely immune from liability because of her role as the government prosecutor of the neglect action. Robinson filed a similar motion to dismiss in March 2000. In an order dated April 27, 2000, the district court granted defendants' motions, holding that "[g]overnment attorneys are absolutely immune from liability for their actions in initiating and prosecuting civil child welfare cases." *Gray v. Poole*, No. 99–cv–2233, slip op. at 2 (D.D.C. Apr. 27, 2000). Because Gray "d[id] not

Territory or the District of Columbia," deprives another of a constitutional right "shall be liable to the party injured." 42 U.S.C. § 1983. Although Gray's complaint did not expressly state that it was based on § 1983, the district court construed it as such, and all parties have adopted that construction.

allege that Farabee injured him in any manner outside the scope of the neglect proceedings," the district court found that absolute immunity covered Farabee. *Id.* at 3. The court also found Robinson "entitled to absolute immunity[,] for the same reasons as the attorney she supervised, defendant Farabee." *Id.* at 4.

Gray appealed the district court's ruling, and Robinson and Farabee now move for summary affirmance.[3]

## II

■ We review the dismissal of plaintiff's complaint de novo, and accept its factual allegations as true. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Sloan v. United States Dep't of Hous. and Urban Dev.,* 236 F.3d 756, 759 (D.C.Cir.2001). We will grant summary affirmance only when the merits of the parties' positions are so clear that expedited action is justified and further briefing unnecessary. *Taxpayers Watchdog, Inc. v. Stanley,* 819 F.2d 294, 297–98 (D.C.Cir.1987). In this case, because the merits are so clear, we summarily affirm the dismissal of Gray's complaint against Farabee and Robinson.

## A

■ The Supreme Court has recognized two kinds of immunity applicable to public officials sued for damages under § 1983. Most officials receive only qualified immunity, which protects them from liability for the performance of discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley,* 509 U.S. at 268, 113 S.Ct. 2606 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Court has also

determined, however, that "some officials perform 'special functions' which ... deserve absolute protection from damages liability." *Id.* at 268–69, 113 S.Ct. 2606 (quoting *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Where absolute immunity is deemed appropriate, an official is protected from all suits attacking conduct within the scope of the immunity, even if the official is alleged to have acted in bad faith. *See Moore v. Valder,* 65 F.3d 189, 194 (D.C.Cir.1995).

■ The Court has recognized as "special functions" deserving of absolute immunity those that are similar "to functions that would have been immune when Congress enacted § 1983." *Buckley,* 509 U.S. at 268–69, 113 S.Ct. 2606. Even where there is a common-law tradition of absolute immunity for a given function, the Court further considers "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Id.* at 269, 113 S.Ct. 2606 (quoting *Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984)). In making these determinations, the Court applies a "functional approach," looking to "the nature of the function performed, not the identity of the actor who performed it." *Id.* (quoting, respectively, *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) and *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

In *Imbler v. Pachtman,* the Supreme Court followed this general approach in holding that a criminal prosecutor is immune from damages under § 1983 for "initiating a prosecution" and "presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court first found the common-law immunity of prosecutors for such

---

**3.** The district court dismissed the complaint against Poole as well, stating that it "agree[d] with those courts that have extended absolute immunity to social workers who assist with the prosecution of child neglect cases." *Gray v. Poole,* slip op. at 4–5. Without commenting

on the merits of that decision, we conclude that it does not meet the stringent standards for summary affirmance. We have therefore, by separate order, directed full briefing and argument for Gray's appeal of Poole's dismissal.

functions to be "well settled," and then concluded that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983." *Id.* at 424, 96 S.Ct. 984. These considerations included the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423, 96 S.Ct. 984. Such unfounded litigation, the Court feared, "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* at 425, 96 S.Ct. 984; *see also Buckley,* 509 U.S. at 270 n. 4, 113 S.Ct. 2606; *Burns,* 500 U.S. at 485–86, 111 S.Ct. 1934.

The Supreme Court extended *Imbler* beyond the context of criminal prosecutions in *Butz v. Economou,* holding absolute immunity applicable to agency attorneys in administrative enforcement proceedings. *Butz,* 438 U.S. at 516–17, 98 S.Ct. 2894. *Butz* concerned a plaintiff who controlled a company registered with the Department of Agriculture as a commodity futures commission merchant. The Department sought to revoke or suspend the company's registration by filing an administrative complaint and conducting administrative proceedings before an agency hearing examiner. Plaintiff responded by suing senior Department officials and the Department attorney who had prosecuted the proceeding. *Id.* at 481–82, 98 S.Ct. 2894.

In analyzing the defendants' immunity claims, *Butz* first recounted the historical immunity of prosecutors previously discussed in *Imbler,* and particularly noted "the common-law precedents extending absolute immunity to parties participating in the judicial process: judges, grand jurors, petit jurors, *advocates,* and witnesses." *Id.* at 509, 98 S.Ct. 2894 (emphasis added); *see also Burns,* 500 U.S. at 489–90, 111

S.Ct. 1934 ("Like witnesses, prosecutors *and other lawyers* were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings...." (emphasis added)). Employing the functional approach described above, the Court declared that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Butz,* 438 U.S. at 515, 98 S.Ct. 2894.

The *Butz* Court then turned its attention to two classes of defendants. Considering first those officials "responsible for the decision to initiate or continue a proceeding subject to agency adjudication," *id.* at 516,, 98 S.Ct. 2894 the Court held: "The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution," *id.* at 515, 98 S.Ct. 2894. As with prosecutors, the Court explained, "[t]he discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete." *Id.* And as with the decision to prosecute, there is "a serious danger that the decision to authorize proceedings will provoke a retaliatory response," and that "[a]n individual targeted by an administrative proceeding will react angrily and may seek vengeance in the courts." *Id.* Furthermore, the Court noted, "[t]he defendant in an enforcement proceeding has ample opportunity to challenge the legality of the proceeding," *id.,* and to have "[h]is claims that the proceeding is unconstitutional ... heard by the courts," *id.* at 516, 98 S.Ct. 2894. Accordingly, the Court held that those officials who are responsible for the decision to initiate or continue administrative proceedings are "entitled to absolute immunity from damages liability for their parts in that decision." *Id.*

Focusing next on the role of an agency attorney who "present[s] evidence in an

agency hearing," the Court declared that it could "see no substantial difference between the function" of such an attorney "and the function of the prosecutor who brings evidence before a court." *Id.* If agency attorneys were held personally liable for damages, the Court reasoned, they, like prosecutors, "might hesitate to bring forward some witnesses or documents." *Id.* at 517, 98 S.Ct. 2894. Moreover, because the evidence submitted by agency attorneys, like that submitted by prosecutors, is "subject to attack through cross-examination, rebuttal, or reinterpretation by opposing counsel," defendants' interests are adequately protected. *Id.* Thus, the Court concluded, "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.*[4]

### B

■ Neither the Supreme Court nor this court has yet addressed the specific question raised in this case: whether absolute immunity extends to government attorneys for their conduct in initiating and prosecuting civil child neglect actions. *Butz,* however, is indistinguishable from the situation before us. We "can see no substantial difference" between the function of agency attorneys in bringing enforcement actions before administrative tribunals and that of District attorneys in bringing neglect actions in Superior Court. *Butz,* 438 U.S. at 516, 98 S.Ct. 2894. In both contexts, government attorneys "must make the decision to move forward ... free from intimidation or harassment." *Id.* The prospect of angry, retaliatory litigation by targets of the attorneys' actions is at least as likely in child neglect cases as in efforts to suspend the registration of commodities merchants. Moreover, as

was true in *Butz,* "the legal remedies already available" to those involved in child neglect proceedings "provide sufficient checks on agency zeal." *Id.* Gray may challenge the legality of the District's actions directly in those proceedings and may raise claims of unconstitutional conduct both there and on appeal.

Seeing no substantial difference between the function of prosecutors and that of agency attorneys in initiating proceedings and presenting evidence, the *Butz* Court extended the historical immunity of the former to the latter. If anything, the function of an attorney who litigates a Superior Court neglect action is closer to that of the prosecutor in *Imbler* than was the function of the agency attorney who litigated administrative hearings in *Butz* itself: Although neither this case nor *Butz* involved a criminal prosecution, all of the conduct here was "intimately associated with the *judicial* phase," *Imbler,* 424 U.S. at 430, 96 S.Ct. 984 (emphasis added), rather than the administrative phase, of the enforcement process. Accordingly, we hold that government attorneys who prosecute child neglect actions perform "functions analogous to those of a prosecutor [and] should be able to claim absolute immunity with respect to such acts." *Butz,* 438 U.S. at 515, 98 S.Ct. 2894. In so doing, we join every circuit that has addressed the question. *See Snell v. Tunnell,* 920 F.2d 673, 692–94 (10th Cir.1990); *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 397 n. 11 (4th Cir.1990); *Myers v. Morris,* 810 F.2d 1437, 1452 (8th Cir.1987), *overruled on other grounds by Burns,* 500 U.S. at 496, 111 S.Ct. 1934; *Walden v. Wishengrad,* 745 F.2d 149, 152 (2d Cir.1984).

■ The only remaining question is whether the conduct of the District of Columbia attorneys at issue here falls within

---

4. Although *Butz* involved a suit brought against federal officials directly under the Constitution pursuant to *Bivens v. Six Unknown Agents Fed. Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *Butz* held that there is no distinction for purposes of

immunity between such a suit and one brought against state officials under § 1983. *Butz,* 438 U.S. at 504, 98 S.Ct. 2894; *see also Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 433 n. 5, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993).

the scope of the immunity. At a minimum, it is clear that absolute immunity extends to "initiating a prosecution" and to "presenting the State's case." *Imbler,* 424 U.S. at 431, 96 S.Ct. 984; *see Buckley,* 509 U.S. at 269, 113 S.Ct. 2606; *Moore,* 65 F.3d at 193; *cf. Buckley,* 509 U.S. at 273, 113 S.Ct. 2606 (holding that absolute immunity does not apply "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer"). This precludes us from assessing § 1983 liability against defendants for "making false or defamatory statements during, and related to, judicial proceedings." *Buckley,* 509 U.S. at 270, 113 S.Ct. 2606; *see Burns,* 500 U.S. at 489–90, 111 S.Ct. 1934; *Moore,* 65 F.3d at 194.

■ The district court found that Gray's complaint "does not allege that Farabee injured him in any manner outside the scope of the neglect proceedings." *Gray v. Poole,* slip op. at 3. That finding is correct. The complaint alleges that Farabee "filed [the] neglect action without a basis or cause," and that she then proceeded to amend the action with "unreliable and unverified probate matters." Compl. at 2. It further alleges that the materials she filed were "libelous and slanderous." *Id.* All of these allegations against Farabee involve statements she made to the court and thus fall well within the scope of her absolute immunity.[5]

■ Although the caption of Gray's complaint also names then-Acting Corporation Counsel Robinson as a defendant, the body of the complaint does not mention any specific action taken by her; in-

deed, it does not mention her at all. Gray's papers in this court describe Robinson as "Farabee's supervisor," and assert only that she "should have never allowed Defendant Farabee to proceed with an unlawful case." Opp'n to Defs.' Mot. for Summ. Affirm. at 3–4. At most, this would make Robinson "responsible for the decision to initiate or continue [the] proceeding"—a function *Butz* clearly held to be within the scope of absolute immunity. *Butz,* 438 U.S. at 516, 98 S.Ct. 2894.

### III

We conclude that attorneys for the District of Columbia are absolutely immune from damages under 42 U.S.C. § 1983 for their conduct in initiating and prosecuting child neglect actions. As this conclusion follows necessarily from the Supreme Court's decision in *Butz,* as well as from the holdings of all the circuits to have addressed the question, this case is appropriate for summary disposition. The decision of the district court dismissing Gray's complaint against Farabee and Robinson is

*Affirmed.*

---

5. Gray's complaint also asserts that the D.C. Superior Court did not have jurisdiction over the neglect action because Gray had not been properly served. Compl. at 2. Federal district courts, however, "lack jurisdiction to review judicial decisions by state and District of Columbia courts." *Richardson v. Dist. of Columbia Court of Appeals,* 83 F.3d 1513, 1514 (D.C.Cir.1996) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *Dist. of Columbia v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). Other than the D.C. Court of Appeals, the United States Supreme Court is the only court with jurisdiction to review this aspect of Gray's complaint. *Id.* We note, moreover, that this is the second time Gray has sought review of the neglect action in federal court on this ground. In 1999, he attempted to remove the case from Superior Court to the United States District Court for the District of Columbia. That case was dismissed and no appeal was taken. *In re: Patrick Gray,* No.99–cv–2230 (D.D.C. Aug. 19, 1999).