**David F. POWER, Appellant,**

v.

**Jo Ann BARNHART, Commissioner, Social Security Administration, Appellee.**

**No. 01–5182.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 2002.

Decided June 11, 2002.

David F. Power, appearing pro se, argued the cause and filed the briefs for appellant.

Fred E. Haynes, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

GARLAND, Circuit Judge:

Attorney David Power seeks a writ of mandamus compelling the Social Security Administration (SSA) to approve a fee agreement he submitted to recover fees for representing a claimant before the SSA. The district court dismissed Power's complaint, finding that he had failed to satisfy the strict requirements for mandamus. Because neither Power's right to relief nor the SSA's duty to provide it is clear, and because Power failed to avail himself of an adequate alternative remedy, we affirm the district court's determination that a grant of the extraordinary remedy of mandamus is inappropriate in this case.

I

Under the Social Security Act, 42 U.S.C. § 406(a), an attorney who represents a person with a claim for Social Security benefits before the SSA has a right to a reasonable fee, fixed in accordance with regulations prescribed by the Commissioner of Social Security. *Id.* § 406(a)(1). In 1980, the SSA issued regulations establishing a "fee petition" process for the purpose

of determining a reasonable fee. *See* 20 C.F.R. §§ 404.1720–.1725, .1730. Those regulations require the attorney to submit a petition listing such information as the services rendered, the amount of time expended, and the fee desired. *Id.* § 404.1725(a). The SSA then evaluates the petition based on such factors as the complexity of the case, the level of skill required of the attorney, and the results achieved for the claimant. *Id.* § 404.1725(b)(1).[1]

In 1990, Congress amended § 406(a), adding a new subsection, § 406(a)(2). *See* Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 5106(a), 104 Stat. 1388, 1388–266. That subsection authorizes an attorney who assists a claimant with an administrative claim to receive compensation pursuant to a "fee agreement" entered into with the claimant. Such an agreement must satisfy three prerequisites: (i) it must be submitted to the Commissioner in writing prior to the time the Commissioner makes a determination on the claim; (ii) it must specify a fee that does not exceed the lesser of 25% of the past-due benefits awarded or $4,000;[2] and (iii) the Commissioner must make a determination favorable to the claimant. 42 U.S.C. § 406(a)(2)(A). If these requirements are satisfied, "then the Commissioner of Social Security shall approve that agreement at the time of the favorable determination, and . . . the fee specified in the agreement shall be the maximum fee." *Id.* As with fee petitions, when a fee agreement is approved, the SSA certifies the fee for payment out of the past-due benefits owed to the claimant. *See id.* § 406(a)(4); 20 C.F.R. § 404.1730(b).

This case originated in a claim for disability benefits filed by Jerome Fleeton in 1997. At that time, Fleeton lived in Ohio and was represented before the agency there by John A. McNally, III. Fleeton signed an "Appointment of Representative" form and a fee agreement naming McNally as his attorney. *See* Joint Appendix (J.A.) at 19–20. Fleeton's initial application for disability benefits was denied, and he requested a hearing before an Administrative Law Judge (ALJ). Before the hearing took place, however, Fleeton moved to Maryland and had the hearing transferred to the Washington, D.C. hearing office.

Fleeton engaged Power, the plaintiff here, to represent him before the ALJ in Washington. Fleeton signed a second Appointment of Representative form and another attorney fee agreement, this time with Power. *See* J.A. at 21, 27. The ALJ awarded Fleeton past-due benefits on October 24, 1998, and issued an order "approv[ing] the fee agreement between the claimant and his representative." J.A. at 24.

The SSA soon realized that two attorneys had represented Fleeton over the course of his claim. On July 6, 1999, the Deputy Chief ALJ of the SSA's Office of Hearings and Appeals issued an order disapproving Power's fee agreement. In a letter to Power, the Deputy Chief ALJ explained that "[s]ince the claimant appointed more than one representative, and all did not sign a single, common fee agreement or waive charging and collecting a fee, the Social Security Administra-

---

**1.** Pursuant to a petition, the Commissioner may authorize a fee even if the claimant was unsuccessful in obtaining benefits. 20 C.F.R. § 404.1725(b)(2).

**2.** This amount was increased to $5,300 effective February 2002. *See* 42 U.S.C.

406(a)(2)(A) (allowing the Commissioner of Social Security to increase the maximum fee agreement award); Maximum Dollar Limit in the Fee Agreement Process, 67 Fed. Reg. 2477 (Jan. 17, 2002).

tion cannot process your fee under the fee agreement process." J.A. at 25. In order to collect a fee, the letter advised, Power would have to "file a fee petition." *Id.*

Power did not file a fee petition, nor did he seek a fee waiver from McNally. Instead, he filed suit in the United States District Court for the District of Columbia under 28 U.S.C. § 1361, seeking a writ of mandamus ordering the SSA to approve his fee agreement.[3] The district court dismissed Power's complaint, holding that § 406(a) does not grant an attorney a clear right, nor impose upon the SSA a clear duty, with respect to approval of a fee agreement when two or more attorneys have submitted agreements regarding the same claim. The court also held that, given the availability of the fee petition process, Power had failed to show that mandamus was the only adequate remedy available. We review the district court's dismissal of the complaint de novo, accepting the complaint's allegations as true for purposes of this appeal. *See Gray v. Poole,* 243 F.3d 572, 575 (D.C.Cir.2001).

## II

■ The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there

is no other adequate remedy available to plaintiff." *Northern States Power Co. v. U.S. Dep't of Energy,* 128 F.3d 754, 758 (D.C.Cir.1997) (quoting *Council of and for the Blind of Delaware Cty. Valley, Inc. v. Regan,* 709 F.2d 1521, 1533 (D.C.Cir.1983) (en banc)). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" *Northern States Power,* 128 F.3d at 758 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)). The plaintiff has failed to satisfy that burden here.

### A

■ Power bases his claim that he has satisfied the first two requirements of mandamus—that plaintiff's right to relief and defendant's duty to act be clear—on the language of 42 U.S.C. § 406(a)(2)(A). That provision declares that the Commissioner of Social Security "shall approve" a fee agreement if the agreement meets the three prerequisites of the subsection described above. As the SSA points out, however, § 406(a)(2) is silent as to what the Commissioner should do if she is presented with more than one fee agreement. Indeed, the three statutory prerequisites, as well as the "shall approve" clause, are all written in the singular—indicating that Congress did not contemplate a scenario in which multiple attorneys presented agreements.[4] Moreover, as the SSA further

---

**3.** Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

**4.** Section 406 (a)(2)(A) provides:
 In the case of a claim of entitlement to past-due benefits under this subchapter, if—
 (i) *an agreement* between the claimant and another *person* regarding any fee to be recovered by *such person* to compensate

*such person* for services with respect to the claim is presented in writing to the Commissioner of Social Security prior to the time of the Commissioner's determination regarding the claim,
 (ii) the fee specified in *the agreement* does not exceed the lesser of—
 (I) 25 percent of the total amount of such past-due benefits ..., or
 (II) $4,000, and
 (iii) the determination is favorable to the claimant,

argues, if there were a mandatory duty to approve any agreement that met the three prerequisites, and if two agreements in a single case did so, then approval of both could conflict with an important purpose of § 406(a)(2)(A)(ii): to cap the amount that a claimant may agree to pay in attorneys' fees at the lesser of 25% of his recovery or $4,000. Accordingly, the SSA concludes—as set forth in its July 6 letter—that where there are agreements with more than one attorney, the attorneys must file fee petitions so that the agency can review the requested fees for their overall reasonableness.

Power concedes that the statute is silent on the question of how the SSA should handle multiple fee agreements. He argues, however, that the SSA need not resort to the fee petition process of § 406(a)(1) to handle the problem of multiple fees that in combination may exceed the statutory maximum. As Power points out, an alternative solution is offered by § 406(a)(3)(A), which empowers the Commissioner to reduce a fee agreement if the agreed-upon fee is "clearly excessive for services rendered." Nonetheless, the fact that there are alternative solutions to the problem posed by multiple fee agreements does not impose a clear duty on the SSA to choose the alternative preferred by the plaintiff.

Power also contends that the SSA's position in this case is inconsistent with its prior interpretation of § 406(a)(2). Following the trail of agency pronouncements on this subject poses only slightly less difficulty than following the trail of bread crumbs left by Hansel and Gretel. Power rests his claim on an attachment to a 1992 internal memorandum written by Daniel L. Skoler, who at the time was the Associate Commissioner of the SSA's Office of

Hearings and Appeals. The attachment to the memorandum states that, even if an ALJ mistakenly approves one of multiple fee agreements, the SSA should continue to process the agreement because the agency's exception to paying under multiple agreements is "not statutory." J.A. at 43. The SSA responds to Power's argument by advising that it has replaced the Skoler memorandum with a new interpretation of the statutory requirements of § 406(a)(2), an interpretation that the agency says is reflected in its current Program Operations Manual System (POMS). See Letter from SSA to Power (July 6, 1999) (citing POMS GN 03940.025C.4) (J.A. at 25). Under this new interpretation, the agency says, a fee request must be made by petition where two or more attorneys represent a claimant. *Id.*; see SSA Br. at 13–14. Power replies that the POMS does not have the authority of the internal memo, and is in any event inconsistent with yet another agency pronouncement, this time made in question–and–answer format in the latest edition of the SSA's Hearings, Appeals and Litigation Law Manual (HALLEX). That pronouncement, Power contends, states that when there are multiple fee agreements, the ALJ should honor the most recent agreement. See Power Br. at 10 (citing HALLEX, Temp. Instr. I–5–109). In surreply, the SSA counters that Power has misconstrued the HALLEX, and that the cited Q&A refers only to multiple agreements between a claimant and the *same* attorney. SSA Br. at 16.

■ There is no reason for us to venture further into this thicket to determine which SSA interpretation is most current or most authoritative, or whether the agency has adequately explained any

then the Commissioner of Social Security shall approve *that agreement* at the time of the favorable determination, and (subject to

paragraph (3)) the fee specified in *the agreement* shall be the maximum fee.
42 U.S.C. § 406(a)(2)(A) (emphasis added).

changes in its views. Both Power and the SSA agree that all three of the interpretive documents noted above lack the administrative formality or other attributes that would justify substantial judicial deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and hence that they would at best qualify for the more limited form of deference accorded under *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *See United States v. Mead Corp.,* 533 U.S. 218, 230–31, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); SSA Br. at 14; Power Br. at 34. Under *Skidmore,* we grant an agency's interpretation only so much deference as its persuasiveness warrants. *See Mead,* 533 U.S. at 235, 121 S.Ct. 2164 (citing *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161). Thus, even were we to choose the document to which we should pay heed, the degree of deference we would apply would hardly be sufficient to transform § 406(a)(2)'s silence on the subject of multiple fee agreements into the "clear duty" required to justify a grant of mandamus. As we have just recently reiterated, where an alleged "duty is not ... plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." *Consolidated Edison Co. of N.Y. v. Ashcroft,* 286 F.3d 600, 605 (D.C.Cir.2002) (quoting *Wilbur v. United States,* 281 U.S. 206, 218–219, 50 S.Ct. 320, 74 L.Ed. 809 (1930)).

### B

■ Power's petition also fails to satisfy the third requirement of mandamus: that there be no other adequate remedy available. "[T]he alternative remedies that might call for refusal to resort to writ of mandamus encompass judicial remedies ... as well as administrative ones." *Car-*

*tier v. Secretary of State,* 506 F.2d 191, 199 (D.C.Cir.1974) (citations omitted); *see Ganem v. Heckler,* 746 F.2d 844, 852 (D.C.Cir.1984). In this case, the SSA advised Power that he could obtain his fee by filing an administrative fee petition pursuant to 20 C.F.R. § 404.1725. Power has failed to satisfy his burden of showing that the fee petition alternative was either unavailable or inadequate.

There is no question that the petition alternative was available, as the SSA expressly advised Power in its July 6 letter. At various places in his briefs, Power suggests that the petition route was unavailable, contending that, in adding § 406(a)(2), "Congress intended the fee agreement process to replace the fee petition process." Power Br. at 4; *see* Power Reply Br. at 5–7. But nothing in the statutory language indicates such an intention; the 1990 addition of § 406(a)(2) simply left the fee petition provision of § 406(a)(1) undisturbed. In support of his argument, Power cites the Conference Report on the 1990 amendments, which he says makes Congress' intent clear. But that report merely reflects Congress' understanding that the new subsection would *"generally* replace the fee petition process with a streamlined process," and goes on to state that "[i]f a fee was requested for a claim which did not meet the conditions for the streamlined approval process, it would be reviewed under the regular fee petition process." H.R. CONF. REP. No. 101–964, at 933 (1990) (emphasis added). In the SSA's view, the latter is precisely the circumstance presented by this case. Finally, even if we did have any lingering doubts as to whether fee petitions and fee agreements continue to coexist as alternative means for requesting payment, the Supreme Court's recent description of the § 406(a)(2) fee agreement provision as "an alternative to fee petitions" is sufficient to dispel them. *Gisbrecht v. Barnhart,* 535

U.S. ——, ——, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002).

Nor has Power persuaded us that proceeding by fee petition would be an inadequate remedy. He does not contend that he would receive less money by proceeding pursuant to petition rather than agreement; indeed, he expressly disavows such a claim. *See* Power Reply Br. at 16, 18. The petition regulations themselves certainly do not suggest that Power's award would be lower were he to take that route. To the contrary, while awards pursuant to fee agreements are statutorily capped at $4,000, there is no such cap on awards granted pursuant to petition.[5]

Power argues that, regardless of whether he would receive less money through petition than agreement, the avenue of petition is inadequate because the right he seeks to vindicate is approval of the fee agreement and not payment of the fee. *See* Power Br. at 15–16; Power Reply Br. at 14–15, 18. This argument, however, misconstrues both § 406(a) and the nature of mandamus relief. If the SSA does owe any duty to Power under § 406(a), it is a duty to pay him a fee for his services out of the benefits that he recovered for the claimant. *See* 42 U.S.C. § 406(a)(1), (2). The petition and agreement procedures are merely alternative means to that end. *See Gisbrecht,* 535 U.S. at ——, 122 S.Ct. at 1821. Indeed, were we to define the means to the end as the end itself, we would simply write the third prong out of the mandamus test. The point of that prong is to ensure that where there are alternative means of vindicating a statutory right, a plaintiff's preference for one over another is insufficient to warrant a grant of the extraordinary writ.

This principle is well illustrated in our mandamus cases. In *Council of and for the Blind,* the plaintiffs sought to compel the Office of Revenue Sharing to use administrative means to enforce a provision of the Revenue Sharing Act, 31 U.S.C. § 1242, that prohibited state and local governments from using revenue sharing funds in discriminatory programs. *See* 709 F.2d at 1524–25. This court held that mandamus relief was not appropriate because the plaintiffs could achieve the purpose of the statutory provision, which ultimately was "to guarantee that the federal government does not finance discriminatory practices by recipients of federal funds," by suing those governments directly under the private citizen suit provision of the Act. *Id.* at 1532 (citation omitted); *see id.* at 1532–33.

Similarly, in *Northern States Power,* we again denied (in part) a petition for mandamus on the ground that the plaintiffs had another adequate remedy. *See* 128 F.3d at 761. In doing so, we first reiterated an earlier holding that the Nuclear Waste Policy Act, 42 U.S.C. § 1013(a)(2), imposed an unconditional duty on the Department of Energy to begin accepting nuclear waste for disposal by January 31, 1998. *Id.* at 758–59. Yet, notwithstanding the Department's announcement that it would not accept such waste by the statutory deadline, we declined to grant the plaintiff utilities' petition for a writ to compel the Department to do so. Contractual remedies under a standard contract between

---

**5.** At oral argument, Power suggested that it would be difficult for him to provide support for a fee petition because, in reliance on the more streamlined fee agreement process, he had not kept time records. The plaintiff did not suggest this potential inadequacy of the fee petition process in his opening or reply briefs, and it is simply too late to raise it for the first time in oral argument. *See Galvan v. Federal Prison Indus., Inc.,* 199 F.3d 461, 468 (D.C.Cir.1999). Moreover, responding to this point at argument, counsel for the SSA said he believed that, in the absence of original records, the agency would accept a fair estimate of time expended because benefits cases of this kind are fairly standardized.

the parties, we said, provided the plaintiffs with "another potentially adequate remedy" in the event the Department failed to perform on time. *Id.* at 759.[6]

As in *Council of and for the Blind* and *Northern States Power,* there is an alternative, adequate remedy available to vindicate Power's statutory interests in this case: the fee petition. Accordingly, Power is unable to satisfy the third requirement of mandamus relief.

## III

Because Power has failed to demonstrate that his "right to issuance of the writ is clear and indisputable," *Gulfstream,* 485 U.S. at 289, 108 S.Ct. 1133 (internal quotation omitted), a grant of the extraordinary remedy of mandamus is unwarranted. The judgment of the district court is therefore

*Affirmed.*

---

6. *See also DRG Funding Corp. v. Secretary of HUD,* 76 F.3d 1212, 1214 (D.C.Cir.1996) (rejecting the plaintiffs' petition for a writ of mandamus to enforce a judgment against the Secretary of Housing and Urban Development, on the ground that the plaintiffs could also obtain payment through the administrative process, followed by a lawsuit if necessary).