In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2918

JOSEPH THOMAS, on behalf of himself and all others
      similarly situated,

*Plaintiff-Appellant*,

*v.*

CITY OF PEORIA and SONNI WILLIAMS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-1018—**Joe Billy McDade**, *Judge*.

ARGUED APRIL 13, 2009—DECIDED SEPTEMBER 3, 2009

Before CUDAHY, POSNER, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff brought suit under
42 U.S.C. § 1983 against the City of Peoria and a lawyer
in the City counsel's office named Sonni Williams, com-
plaining that he had been arrested in violation of his
Fourth Amendment rights (made applicable to state
action by interpretation of the Fourteenth Amendment)
and also deprived of his liberty without due process

of law. He added state law claims for false arrest and abuse of process. The district judge dismissed the federal claims for failure to state a claim and having done so refused to certify a class of persons arrested in circumstances like the plaintiff's. He allowed the state law claims to proceed, but dismissed them on summary judgment; the plaintiff does not appeal that ruling.

First ruling on the merits of the federal claims, and then denying class certification on the basis of that ruling, puts the cart before the horse, as we have emphasized in previous cases. *Wiesmueller v. Kosobucki*, 513 F.3d 784, 786-87 (7th Cir. 2008); *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455-56 (7th Cir. 2007); *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) (per curiam); *Premier Electrical Construction Co. v. National Electrical Contractors Association, Inc.*, 814 F.2d 358, 363 (7th Cir. 1987); *Watkins v. Blinzinger*, 789 F.2d 474, 475-76 n. 3 (7th Cir. 1986). Among other objections to that way of proceeding, it deprives the defendants of the benefit of res judicata should they be sued by other members of the class. But as is also all too common, the defendants in this case defend the denial of certification—perversely, because they are rightly confident that the plaintiff's claim, and therefore the claims of the other class members, have no merit, so that if the class had been certified the judgment for the defendants would spare them further suits by members of the class. But since neither side is challenging the denial of certification, we shall let it stand.

Joseph A. Thomas was stopped by a Peoria police officer for a traffic violation, and arrested by the officer when he

learned that there was an outstanding arrest warrant for *Joshua* A. Thomas. Although the names were different and also the addresses, the arrest warrant listed the number of the plaintiff's driver's license rather than that of Joshua Thomas's, and the officer may have thought therefore that Joshua was pretending to be a different person. The plaintiff was booked, and released on a $100 bond; and several days later, when he appeared before a state court judge for a preliminary hearing, the charges against him were dismissed because he was indeed not Joshua Thomas. Cf. *Baker v. McCollan*, 443 U.S. 137, 140-41 (1979); *Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006).

The warrant for Joshua Thomas's arrest had been issued by a state court judge upon a motion filed by defendant Williams charging that Thomas had nine unpaid parking tickets. The plaintiff argues that neither Illinois state law nor Peoria ordinances authorize a person to be arrested for having failed to pay parking tickets, and therefore his arrest was an unreasonable seizure. Ordinarily the defendant would be the arresting officer, since the prosecutor would have immunity (we discuss the issue of immunity later) and since the officer's employer could not be sued under the doctrine of respondeat superior because that doctrine is inapplicable to suits under section 1983. But the plaintiff claims that the City of Peoria has a policy of arresting people for not paying their parking tickets, a policy that he claims is unconstitutional; and if it does have such a policy and the policy is unconstitutional, the City would be a tortfeasor and not just a tortfeasor's employer, and therefore liable without reference to respondeat superior.

At the oral argument of the appeal, one of the judges raised the question whether the plaintiff lacks "standing" to challenge the legality of an arrest for unpaid parking tickets. Not standing in the constitutional sense, for he has suffered a harm that he would not have suffered had the defendants obeyed state law—in which event he would not have been arrested—and he could be made whole for that harm by being awarded damages. Rather, standing in the "zone of interests" sense, a requirement for maintaining a suit in federal court but one imposed by federal common law, rather than by the Constitution as a condition of federal jurisdiction.

The term "zone of interests" originated as a guide to determining who is a person "aggrieved" by an administrative ruling within the meaning of the Administrative Procedure Act and therefore entitled to challenge the ruling in court. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153-55 (1970); *United States ex rel. Hall v. Tribal Development Corp.*, 49 F.3d 1208, 1214 (7th Cir. 1995); *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1243-44 (7th Cir. 1991); *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 226 (3d Cir. 1998); *Church of Scientology Flag Service Organization v. City of Clearwater*, 2 F.3d 1514, 1525-26 (11th Cir. 1993). And it is found mainly in APA cases. But it expresses a broader principle, related to the tort concept of remoteness of injury.

Often the violation of a statute or a common law doctrine injures someone who is not an intended beneficiary of the statute or the doctrine. Consider *Gorris v.*

*Scott*, 9 L.R.-Ex. 125 (1874), where a number of the plaintiff's sheep were swept overboard in a storm to their death while being transported on the defendant's ship. The defendant had failed to install pens in which to hold the animals on their journey, as required by statute. Had the pens been installed, the sheep would have been saved. But because the statute's purpose was merely to prevent infection, not to save animals from being drowned, the suit failed. An owner of animals killed not because of disease but because of the rolling of a ship during a storm was not within the class of persons intended to be protected by the statute under which he was suing.

In *Gorris*, as in many of the APA cases, the statute that created the right of action circumscribed the beneficiaries and thus the scope of liability. But in other cases the class of persons who are permitted to sue to enforce a statute or a common law doctrine is circumscribed in an exercise of judicial discretion guided by concerns with the administrative costs of liability relative to the benefits of the threat of liability in bringing about better compliance with law. We discussed this second type of "zone of interests" determination in *MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 747 (7th Cir. 2007), where the question was whether real estate brokers could challenge an ordinance that reduced the salability of the homes in the area in which the brokers operated. The ordinance undoubtedly harmed the brokers by reducing the number of sales, but the primary injury was to homeowners who wanted to sell their homes, and we disapproved of "allowing a

derivative victim to preempt the claims of the immediate victim." *Id.* Allowing remotely injured persons to sue would interfere with the primary victims and add more to the judiciary's burdens than to the deterrent effect of the law sued under.

This discussion exposes an ambiguity in what it means to be within the "zone of interests" and therefore entitled to sue. It can denote the class of persons injured by a violation who are the intended beneficiaries of the law that has been violated; but it can also denote a class of victims that excludes persons derivatively or peripherally injured by the violation. Our opinion in *MainStreet* illustrated that exclusion with "the rule of antitrust law that denies the right of a purchaser from a cartel's customers to sue the cartel for damages even if the customers passed on the cartel overcharge to their purchasers. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). There is Article III standing, but there is no right to sue—not because there is no antitrust violation, but because it is efficient to confine the right to sue to the immediate customer of the cartel rather than to multiply the number of plaintiffs and burden the court with having to apportion damages between the first and second tiers of purchasers." 505 F.3d at 747.

Remoteness of injury as a limitation on liability is a common law principle well illustrated in a number of famous opinions by Cardozo. E.g., *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931); *Palsgraf v. Long Island R.R.*, 162 N.E. 99 (N.Y. 1928); *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896 (N.Y. 1928); *Kerr S.S. Co. v. Radio Corp. of*

*America*, 157 N.E. 140 (N.Y. 1927). It is securely a principle of federal common law, as illustrated by such cases as *Clarke v. Securities Industry Association*, 479 U.S. 388, 400-01 n. 16 (1987); *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 320-21 n. 3 (1977); *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 932-33 (7th Cir. 2007); *Gale v. Hyde Park Bank*, 384 F.3d 451, 452 (7th Cir. 2004); *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1257-58 (7th Cir. 1995), and *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 440-41 n. 20 (2d Cir. 2008)—as well as by *Illinois Brick* and *MainStreet*, both federal cases not governed by the Administrative Procedure Act, the principal generator of "zone of interests" cases.

If Illinois state and local law is as the plaintiff claims (a question we need not answer, and therefore do not since only the Illinois courts can declare Illinois law authoritatively), and if in addition an arrest for violating a law that does not authorize arrest thereby violates the constitutional prohibition against unreasonable seizures, Joshua Thomas is a primary victim of the City of Peoria's allegedly unconstitutional policy. But Joseph Thomas, our plaintiff, is not. He is the accidental victim of a policy aimed at protecting a class to which he does not belong—people who don't pay their parking tickets.

Not that it isn't odd to think that Joshua, the scofflaw, has greater rights than the innocent Joseph. But Joseph's argument that we are considering depends on incorporating the state and local protections of parking violators from arrest into the Fourth Amendment, and he is not within those protections.

But suppose, contrary to what we have just said, that the state and local no-arrest rules were intended to protect people falsely accused of parking violations from being arrested. Would that carry the day for the plaintiff? (Since the nonconstitutional standing doctrine is not jurisdictional, we are at liberty to resolve the merits as an alternative ground of decision.) It would not. The Supreme Court has held that if an arrest is otherwise reasonable, the fact that it is not for an "arrestable" offense does not make it unconstitutional. *Virginia v. Moore*, 128 S. Ct. 1598, 1606-07 (2008); see also *United States v. Turner*, 553 F.3d 1337, 1345-46 (10th Cir. 2009); *Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008). The dictum in *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989), on which the plaintiff relies—"The reasonableness of an arrest depends upon the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, *was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense*" (emphasis added)—cannot survive *Moore*.

The plaintiff fares no better with his argument that an arrest for an offense that cannot be punished by jail or prison is unreasonable even if state law permits it. As with many traffic violations, the only "punishment" authorized by Illinois law for not paying one's parking tickets is (we are assuming) a monetary penalty that is not even classified as a "fine." But the Fourth Amendment does not forbid an arrest for a "nonjailable" offense. *Atwater v. City of Lago Vista*, 532 U.S. 318, 351-54 (2001);

*Williams v. Rodriguez*, 509 F.3d 392, 399-401 (7th Cir. 2007); *Hernandez v. Sheahan*, *supra*, 455 F.3d at 774. Even arrests for violations of purely civil laws are common enough, and usually unexceptional—examples that spring to mind are arrests for civil violations of the immigration laws (such as overstaying a visa) and for civil contempt.

The plaintiff's due process argument hovers on the brink of the preposterous. It is that the City deprived him of liberty by arresting him without having notified him that failure to pay parking tickets might lead to an arrest. Since he didn't fail to pay his parking tickets (as far as we know, he had no parking tickets), the notice could not have helped him. What he should as a matter of logic be arguing (though it would not be a winning argument either) is that the City should have notified him that its policy of arresting people for not paying parking tickets is clumsily administered, with the result that people who do pay their parking tickets, or for that matter never get parking tickets, had better watch out. The implication would be that if he had received such a warning maybe he would have stopped driving.

Finally, even if defendant Williams violated the plaintiff's rights in filing the motion that led to his arrest, she has absolute immunity from liability to pay damages for the consequences of what she did. Prosecutors have absolute immunity when they are performing prosecutorial duties, and filing a complaint is such a duty, even if it is a complaint charging a civil rather than a criminal violation, *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995);

*Blakely v. United States*, 276 F.3d 853, 871 (6th Cir. 2002); *Gray v. Poole*, 243 F.3d 572, 577 (D.C. Cir. 2001); *Schrob v. Catterson*, 948 F.2d 1402, 1411-12 (3d Cir. 1991), which seems the correct characterization of nonpayment of parking tickets in Peoria, Illinois. "Prosecution," for purposes of absolute prosecutorial immunity, just means law enforcement by public officers. Whether the law being enforced is civil or criminal or something in between, such as a parking violation, is irrelevant. See, e.g., *Butz v. Economou*, 438 U.S. 478, 516-17 (1978) (civil enforcement of Department of Agriculture regulations); *Smith v. Power*, *supra* (civil proceedings to demolish a house that violated the building code); *Gray v. Poole*, *supra* (civil child-neglect actions); *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir. 1983) (civil enforcement of securities laws). The work of prosecutors requires them constantly to be inflicting costs on private citizens, so that without immunity they would be the targets of continuous litigation that would make it impossible for them to perform their duties. This is so whether their "prosecutions" are civil, or criminal, or merely, as in the case of unpaid parking tickets in Peoria, administrative.

The plaintiff's reliance on *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997), is unavailing; indeed the decision caps the ruination of his case. It holds that while prosecutors do not have absolute immunity for filing affidavits in support of arrest warrants because that is a merely investigative activity, they do have it when applying for an arrest warrant because applying for a warrant is part of the prosecutor's role as advocate, and that means it belongs to the "judicial phase" of criminal justice, *Imbler*

*v. Pachtman*, 424 U.S. 409, 430 (1976), rather than to its investigatory or administrative phases. *Burns v. Reed*, 500 U.S. 478, 491 (1991). (*Burns* involved a search warrant, but its analysis is equally applicable to an arrest warrant.) The distinction may seem rather tenuous, or artificial, or even question-begging, but it makes practical sense because a person who supplies the facts to back the warrant has a greater opportunity to misrepresent them. And although this doesn't explain why the police officer who applies for the warrant lacks absolute immunity, a reason suggested in the decision that denied the police that immunity is that they are further removed from the judicial phase of the criminal process than prosecutors are. *Malley v. Briggs*, 475 U.S. 335, 342-43 (1986). And probably in most cases the police officer who applies for the warrant writes and signs the supporting affidavit.

AFFIRMED.