**Dennis M. SNYDER, et al., Plaintiffs,**

v.

**Christine TALBOT, et al., Defendants.**

**Civ. No. 93–129–B–C.**

United States District Court, D. Maine.

Oct. 15, 1993.

---

Dennis M. Snyder, pro se.

Christine Talbot, pro se.

Francis Talbot, Jr., pro se.

Christopher C. Taintor, Norman, Hanson & Detroy, Portland, ME, for defendant Claudia Sharon.

Mary Mitchell Friedman, Petruccelli & Martin, Portland, ME, for defendant Mary Gay Kennedy.

William W. Willard, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for defendant Jeanne Feintech.

Peter J. Brann, Asst. Atty. Gen., Augusta, ME, for defendants Edward Rogers, Roland Beaudoin and Ellen Gorman.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT SHARON'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

■ This action was instituted on June 1, 1993, by Plaintiff Dennis Snyder on his own behalf and on behalf of his minor child, Plaintiff "S–8", against Defendants Christine and Francis Talbot, Claudia Sharon, Mary Gay Kennedy, Jeanne Feintech, Edward Rogers, Roland Beaudoin, and Ellen Gorman.[1] The factual allegations raised in the Complaint relate to a contested divorce and custody dispute in the State of Maine between Plaintiff Snyder and Defendant Christine Talbot (hereinafter "Talbot") who are the natural parents of Plaintiff "S–8". The Complaint raises causes of action against Defendants pursuant to sections 1983 and 1985(3) of the Civil Rights Act of 1871, alleging that Defendants conspired to deprive Plaintiff Snyder of his rights and liberties protected by the Fourteenth Amendment. 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). The rights and liberties alleged to have been violated pertain to Plaintiff's right to privacy, encompassing parental rights to enjoy the companionship and society of one's children; rights to due process of the law; and rights to equal protection under the law, all of which are protected against state intervention under the Fourteenth Amendment.[2] Plaintiff's remaining allegations on behalf of his minor child, Plaintiff "S–8", concern only Defendant Feintech and are dealt with in a separate Memorandum of Decision and Order issued by this Court today. (Docket # 71).

■ Now pending before the Court is a Motion to Dismiss for failure to state a claim, filed on behalf of Defendant Claudia Sharon, who served as Talbot's private attorney during the divorce/custody litigation. Fed. R.Civ.P. 12(b)(6).[3] This Court will grant De-

---

1. Allegations against Mary Gay Kennedy, who served as guardian *ad litem* to Plaintiff's minor child, have been dismissed based upon this Court's determination that said Defendant is absolutely immune for acts performed pursuant to her court-appointed status. (Docket # 5 and # 16). Allegations in the Complaint against Rogers, Beaudoin, and Gorman, who serve as judges in the State of Maine and who presided over various phases of the divorce/custody proceedings, were dismissed based on this Court's finding that Defendant Judges are absolutely immune from liability for acts performed pursuant to their judicial roles. (Docket # 3).

2. Plaintiff also alleges that his rights were abridged under the Privileges and Immunities Clause of Article IV, section 2, clause 1 of the Constitution. However, that clause, the purpose of which is to prohibit discrimination by states against nonresidents, is not implicated by the allegations raised in Plaintiff's *pro se* Complaint. *See Whitfield v. Ohio*, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778 (1936) (holding that Article IV, section 2 is directed against discrimination by the state in favor of its own citizens and against citizens of other states). *See also United States v. Harris*, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290

(1883) (holding that the provision is directed against state action discriminating against citizens of other states and that it does not empower Congress to enact laws to punish private citizen for invasion of rights of his fellow citizen conferred by state upon all citizens alike).

3. Alternatively, Defendant's counsel has requested that the Court enter Summary Judgment in favor of Defendant pursuant to Federal Rule of Civil Procedure 56(b), submitting certified copies of records from the state-court divorce litigation between Plaintiff Snyder and Defendant Talbot in support of the motion. *See* Exhibits A–G submitted in support of Defendant Claudia Sharon's Motion to Dismiss or for Summary Judgment, (Docket No. 30). It is within the Court's discretion whether to consider these materials in deciding the pending motion, and the Court declines to do so. *See* Fed.R.Civ.P. 12(b)(6) and *Whiting v. Maiolini*, 921 F.2d 5 (1st Cir.1990); *see also* A. Wright & C. Miller, Vol. 5A *Federal Practice and Procedure*, § 1366 at 491 (1990 & 1993 Supp.) ("The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.")

fendant Sharon's Motion to Dismiss with respect to causes of action filed pursuant to section 1983 because the Complaint fails to allege facts sufficient to support a finding that Defendant acted "under color" of state law, which is a prerequisite to maintaining a cause of action under that section of the Civil Rights Act. 42 U.S.C. § 1983. This Court will also grant Defendant's Motion to Dismiss with respect to causes of action filed pursuant to section 1985(3) because the factual allegations in the Complaint, at most, establish Defendant's participation in a private conspiracy, and private conspirators cannot be held liable for violating rights that are protected under the Constitution only against encroachment by states. 42 U.S.C. § 1985(3). *Bray v. Alexandria Women's Health Clinic,* — U.S. —, —, 113 S.Ct. 753, 764–65, 122 L.Ed.2d 34 (U.S.1993).

To resolve Defendant's Motion to Dismiss, the Court must accept as true all factual allegations in the Complaint, construe them in favor of Plaintiff, and decide whether, as a matter of law, Plaintiff could prove no set of facts which would entitle him to relief. *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir.1987); *Gott v. Simpson,* 745 F.Supp. 765, 768 (D.Me.1990). The factual allegations underlying Plaintiff's Complaint with respect to Defendant Sharon are set forth below.

## I. FACTUAL ALLEGATIONS

Plaintiff initiated divorce proceedings in August of 1988. The divorce was granted, but custody and visitation were still being litigated when Talbot hired Defendant Claudia Sharon as her legal counsel in the summer of 1990. As proceedings continued into the summer of 1991, Plaintiff was diagnosed as having a disability known as "bi-polar illness." Amended Complaint (Docket # 12), ¶ 69. Plaintiff alleges that this disability places him into "a discrete and insular minority" of handicapped people, *id.* at ¶ 12, and that he is also a member of a suspect class defined as "divorcing or divorced male parents who have minor children," "having the immutable characteristics of nonbirthing reproductive organs." *Id.* at ¶ 13.

The gravamen of Plaintiff's conspiracy allegations against Defendant Sharon is that she joined Talbot, Talbot's husband Francis, and his minor child's guardian *ad litem* (hereinafter "GAL") in a concerted plan to deprive Plaintiff of his constitutional rights (*i.e.,* rights to due process, equal protection, personhood and privacy interests in the society and companionship of his son). The Complaint alleges that the Defendant conspirators were motivated by animus directed at Plaintiff because of his disability and gender as defined above. *Id.* at ¶¶ 254–85.

In carrying out this alleged conspiracy, Plaintiff claims that Defendant Sharon joined Talbot in falsely informing school personnel and police that Plaintiff was not authorized to pick up his child at school, *id.* at ¶¶ 98–108; in falsely informing Plaintiff that his visitation schedule with his child had been terminated, *id.* at ¶ 101; in conspiring with Talbot to disregard court visitation orders, *id.* at ¶¶ 107 & 131; in exchanging notes and joking with the GAL during court proceedings, *id.* at ¶¶ 112 & 126; and in relying on the GAL's recommendations to move the court to restrict Plaintiff's visitation rights, *id.* at ¶ 131. The Complaint further alleges that these actions taken by Defendant and her co-conspirators served to deprive Plaintiff of the companionship of his child for a period exceeding ten months and caused emotional distress, mental anguish, and other damages. *Id.* at ¶¶ 259, 267, 275, & 283.

In support of his allegations that Defendant and other conspirators were motivated by animus directed at him based on his gender and his handicap, Plaintiff's Complaint describes a conversation that he had with the GAL in which she allegedly made "disparaging remarks" about *her* husband's relationship with their minor children, *id.* at ¶ 84, and further alleges that the GAL demonstrated a bias against him by refusing to review the materials or interview witnesses submitted on Plaintiff's behalf. *Id.* at ¶ 86. With respect to Defendant, the Complaint quotes from a court motion filed by Sharon in which she asked:

On what basis does the Court conclude that 'Mr. Snyder's rapid and radical mood changes ... present the *appearance* of

instability' rather than instability? On what evidence does the Court conclude that Mr. Snyder is *not* in fact unstable? *Id.* at ¶ 147. In addition to alleging that the above actions constitute a conspiracy motivated by class-based animus because of Plaintiff's handicap and gender, the Complaint asserts that the failure of the state court to sanction Defendant Sharon's conduct was sufficient to transform her behavior into "state action," supporting a cause of action under section 1983. 42 U.S.C. § 1983. *Id.* at ¶¶ 372 & 381. The Court will first consider the section 1983 cause of action before assessing the merits of the 1985(3) conspiracy allegations.

## II. 42 U.S.C. § 1983 [4]

Plaintiff alleges that Defendant Sharon, by conspiring to prevent Plaintiff from visiting with his son, acted "under color" of state law in depriving Plaintiff of his parental right of companionship and society with his natural child. *Id.* at ¶¶ 371–73 & 379–82. Because Plaintiff does not allege that Defendant acted in concert with any state actor, the Complaint fails to state a claim and will be dismissed.

■ As the Court of Appeals for the First Circuit has indicated, "(i)t is black-letter law that a showing of interference with a constitutionally-protected right by someone acting under color of state law is a prerequisite to a § 1983 action". *Malachowski v. Keene,* 787 F.2d 704, 710 (1st Cir.1986), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and

*Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). The Defendant need not be an officer of the state to satisfy the purposes of the statute. "It is enough that he is a willful participant in joint activity with the State or its agents". *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980).

■ In order to establish that a private individual acted "under color" of law, the Supreme Court has required a showing that the Defendant "reached an understanding" with a state officer, *Adickes,* 398 U.S. at 152, 90 S.Ct. at 1605, or corruptly conspired with a judge through the use of bribery or other means, *Dennis,* 449 U.S. at 29, 101 S.Ct. at 187. The Complaint before the Court, however, is bereft of any allegations that Defendant Sharon made improper contact or reached an agreement with the judge with respect to the alleged violations of Plaintiff's rights. The Complaint alleges merely that the judge's failure to sanction Defendant for her actions "conveys sufficient state authority, power, aid, acquiescence and state action" to satisfy the "under color" of law requirement of section 1983. Complaint, ¶¶ 372 & 381. These allegations, at most, depict Defendant as "resorting to the courts and being on the winning side of a lawsuit" which "does not make a party a co-conspirator or a joint actor with the judge." *Dennis,* 449 U.S. at 28, 101 S.Ct. at 186.[5]

■ If the Complaint is read liberally, which is the standard applied to pleadings

4. Section 1983 of the Civil Rights Act of 1871 provides in relevant part as follows:

> § 1983. Civil action for deprivation of rights
>   Every person who, under color of any statute, ordinance, regulation, custom, or usage ... causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5. In this regard, Plaintiff's Complaint is similar in nature to a complaint filed in *Harvey v. Harvey,* 949 F.2d 1127 (11th Cir.1992), where Plaintiff alleged that her husband, a private attorney,

and doctors deprived her of her constitutional rights pursuant to section 1983 in committing her to a state institution. In that case, the Court of Appeals for the Eleventh Circuit stated that "Mrs. Harvey's complaint merely string(s) together the discrete steps of the commitment process, without showing contacts between the appellees that could prove private and alleged state actors had 'reached an understanding' to violate her rights." *Harvey,* 949 F.2d at 1133 (quoting from *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988)).

Likewise here, Plaintiff's Complaint strings together events in a hotly contested custody battle, without alleging any facts to suggest that Defendant acted improperly with state actors to violate his rights.

filed by *pro se* litigants,[6] then it is possible to make out a cause of action alleging that Defendant acted under color of state law by conspiring with the guardian *ad litem*. The Complaint alleges that the GAL, as a court-appointed officer, was a state actor and includes several factual allegations that might establish the existence of an agreement or conspiracy between the GAL and Defendant. But even using this liberal construction, the Complaint fails to allege a cause of action under section 1983 because courts have generally held that GALs are not state actors for the purposes of the civil rights statute.

In *Meeker v. Kercher*, for example, the Court of Appeals for the Tenth Circuit reasoned that a guardian *ad litem* is analogous to a court-appointed attorney because she owes her undivided loyalty to the minor client and not to the state and, hence, does not act "under color" of state law for purposes of section 1983. *Meeker*, 782 F.2d 153, 155 (10th Cir.1986). *See also Malachowski*, 787 F.2d at 706 & 710, (stating that a court-appointed attorney for a minor in delinquency proceedings, who had earlier acted as minor's guardian *ad litem* in abuse and neglect proceedings, does not act under color of state law); and *Polk County v. Dodson*, 454 U.S. 312, 320, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981) (holding that a public defender, although an employee of the state, assumes no obligation to the state's mission when serving as independent counsel to an indigent defendant and does not act under color of state law).

The same reasoning applies to this case, where the GAL was appointed under the Probate Code of the State of Maine, allowing for the appointment of a guardian *ad litem* for the limited purpose of representing the interest of a minor, upon a determination that representation of the minor's interest would otherwise be inadequate. 18–A M.R.S.A. § 1–403 ¶ 4. Pursuant to this statute, the GAL was responsible for exercising independent judgment to ensure that the rights of Plaintiff's minor child were fully and adequately protected in the context of court proceedings, regardless of the interests of the state and other parties to the litigation. She did not exercise custodial or supervisory rights over the child or engage in any other arrangements that could have been viewed as carrying out the state's mandate. *See Polk County*, 454 U.S. at 320, 102 S.Ct. at 450, (contrasting the independent role of public defenders to the custodial and supervisory functions carried out by doctors employed at state institutions).[7] Based on this restrictive and independent role, the GAL is likewise not a state actor for purposes of § 1983.

Based on this Court's finding that the GAL is not a state actor, as well as the absence of any allegation of conspiracy or agreement reached between Defendant and the state court judge, the Complaint fails to allege any set of facts that would entitle Plaintiff to relief under section 1983.

### III. 42 U.S.C. § 1985(3)

■ The final issue to consider on this Motion to Dismiss is whether Plaintiff has stated a claim under section 1985(3) which provides in relevant part:

> If two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . or cause to be done, any act in furtherance of the object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages. . . .

42 U.S.C. § 1985(3). The Complaint alleges that Defendant conspired with the guardian

---

6. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (holding that *pro se* petitions will be held to "less stringent standards than formal pleadings drafted by lawyers.") *But cf. Glaros v. Perse*, 628 F.2d 679, 684 (1st Cir.1980) (holding that "even *pro se* plaintiffs [must] plead specific facts backing up their claims of civil rights violations.")

7. The only instances of cases that classify guardians as state actors involve situations in which the guardian takes on substantial authority, conferred by the state, for long term involvement in overseeing a minor's or incompetent's well-being. *See*, for example, *Thomas S. v. Morrow*, 781 F.2d 367, 377–78 (4th Cir.1986) (holding that state-appointed guardian who had custody of ward and acted together with or obtained significant aid from state officials was a "state actor" under section 1983).

*ad litem* and the Talbots to deprive Plaintiff of his constitutionally protected rights under the Fourteenth Amendment. Because the Court concludes that no state actors were involved in the alleged violations of Plaintiff's rights, the Court must now determine whether the private conspiracy was "aimed at interfering with rights constitutionally protected against private, as well as official, encroachment." *Carpenters v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). In *Carpenters,* the Supreme Court ruled that an alleged private conspiracy to infringe the First Amendment rights of nonunion workers failed to state a claim under section 1985(3) because the First Amendment, by virtue of its incorporation into the Fourteenth Amendment, prohibits only state actors from abridging an individual's right to free speech. The only rights that the Supreme Court has recognized as constitutionally protected against private, as well as state, encroachment are the Thirteenth Amendment right to be free from involuntary servitude and the right of interstate travel also protected under the Thirteenth Amendment. *Bray,* —— U.S. at ——, 113 S.Ct. at 764 (citing *United States v. Kozminski,* 487 U.S. 931, 942, 108 S.Ct. 2751, 2759, 101 L.Ed.2d 788 (1988) and *United States v. Guest,* 383 U.S. 745, 759, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966)).

The allegations in Plaintiff's Complaint, given liberal construction for purposes of the present motion, make out, at most, a claim that Defendant was involved in a private conspiracy to deprive Plaintiff of various rights protected by the Fourteenth Amendment.[8] The Supreme Court has long held that the Fourteenth Amendment protects the individual against state action and not against tortious acts committed by individuals. *Carpenters,* 463 U.S. at 831–32, 103 S.Ct. at 3357–58, (citing a chronology of cases holding that the Fourteenth Amendment is a bar against state, not private, action). By failing to show that Defendant or other conspirators acted in concert with state actors, the Complaint alleges merely that Defendant conspired with other private parties to violate rights that are not constitutionally protected against private encroachment. As the Supreme Court held in *Carpenters,* section 1985(3) does not reach such private conspiracies that are "aimed at a right that is by definition a right only against state interference". *Id.* at 833, 103 S.Ct. at 3358. Hence, with respect to Plaintiff's 1985(3) allegations, the Complaint fails to state a claim upon which relief may be granted.[9]

Accordingly, it is *ORDERED* that Defendant's Motion to Dismiss all claims against her be, and it is hereby, *GRANTED.*

So *ORDERED.*

---

8. The Fourteenth Amendment of the U.S. Constitution reads in relevant part:

> ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

9. While the Plaintiff's action has been dismissed because the alleged private conspiracy did not aim at interfering with any constitutionally protected rights, the Complaint may not satisfy other requirements for a section 1985(3) cause of action. First, Plaintiff must demonstrate that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" was "behind the conspirators' action". *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The Complaint is filled with conclusory allegations that Defendant and other conspirators were motivated by animus directed against Plaintiff's gender and handicap but includes scant factual support for this claim. (*See* part I of this Memorandum of Decision and Order, pp. 5–6).

Further, the requirement of a "perhaps otherwise class-based ... animus" has been construed very narrowly, making it "a close question whether 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *Carpenters,* 463 U.S. at 836, 103 S.Ct. at 3360. In *Bray,* the Supreme Court recently declined to decide whether women make up a protected class, but did hold that women seeking abortions do not constitute a class for purposes of the civil rights statute. —— U.S. at ——, 113 S.Ct. at 758–59. This narrow interpretation casts grave doubts on Plaintiff's claim that he is in a protected class of "divorced or divorcing men with minor children" or of persons diagnosed with "a bi-polar medical condition."