**Logan MARR, et al., Plaintiffs**

v.

**State of MAINE DEPARTMENT OF HUMAN SERVICES, et al., Defendants**

**No. CIV. 01–224–B–C.**

United States District Court, D. Maine.

July 9, 2002.

Charles Clifton Fuller, III, Attorneys Office, P.A., Belfast, ME, for plaintiffs.

Andrew S. Hagler, Assistant Attorney General, Augusta, ME, Charles A. Harvey, Jr., Robert S. Frank, Harvey & Frank, Edward R. Benjamin, Jr., Thompson & Bowie, Jonathan W. Brogan, Norman, Hanson & Detroy, Portland, ME, E. James Burke, Lewiston, ME, Thad B. Zmistowski, Eaton, Peabody, Bradford & Veague, Bangor, ME, Barri L. Bloom, Richardson, Whitman, Large & Badger, Portland, ME, for defendants.

### ORDER AFFIRMING THE RECOM-MENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge having filed with the Court on May 9, 2002, with copies to counsel, her Recommended Decision on Defendant Irwin's Motion to Dismiss (Docket No. 21); and Plaintiff having filed her objection thereto on May 21, 2002, (Docket No. 22), to which objection Defendant Irwin filed his response on June 5, 2002 (Docket No. 23); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, it is **ORDERED** as follows:

(1) Plaintiff's objection is hereby **DENIED**;

(2) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(3) The motion to dismiss Counts I through XI, XIII, XVI, XVII, XVIII, and XX to the extent they relate to Defendant Irwin is hereby **GRANTED**.

### RECOMMENDED DECISION ON DEFENDANT IRWIN'S MOTION TO DISMISS

KRAVCHUK, United States Magistrate Judge.

On behalf of her child and herself, Plaintiff Christy Marr ("Marr") brought an action against Lawrence Irwin, the State of Maine, Department of Human Services, and other defendants stemming from the death of her daughter, Logan Marr ("Logan") while in state custody. (Docket No. 1.) Numerous claims relate to defendant Irwin and allege claims for civil rights violations under 42 U.S.C. § 1983 and claims for malpractice, negligence, wrong-

ful death, intentional infliction of emotional distress, slander/libel, and civil conspiracy. Presently before the Court is Irwin's Motion to Dismiss all counts against him on the grounds that plaintiff has failed to state a claim upon which relief can be granted and that as a guardian ad litem he has quasi-judicial immunity. (Docket No. 14.) I recommend that the Court **GRANT** Irwin's motion to dismiss Counts I–X, XI, XIII, XVI, XVII, XVIII, and XX to the extent these counts pertain to him.[1]

## Factual Allegations

Defendant Lawrence Irwin is a member of the Maine State Bar and for a number of years he has performed as a court-appointed guardian ad litem ("GAL"). (Compl. ¶¶ 70–71.) He is well aware of his duties and legal obligations as a GAL. (*Id.* ¶ 71.) On or around March 8, 2000, Irwin was appointed as a GAL to Marr's biological daughter, Logan, by the Maine District Court near the same time the court issued a Preliminary Protection Order requested by the Maine Department of Human Services ("DHS"). (*Id.* ¶¶ 2, 9.) The complaint alleges that because the state paid Irwin for his services as a guardian ad litem, Irwin at all relevant times acted under color of law and the state is responsible for him. (*Id.* ¶¶ 69, 100, 290.)

During the course of Irwin's appointment as a GAL, Logan was an adjudicated dependent of DHS and was involuntarily placed in the state's care and custody. (*Id.* ¶¶ 89, 291.) DHS first placed the child in a foster home in March 2000, but by August she was removed due to abuse. (*Id.* ¶¶ 5, 6.) In September 2000, DHS placed the child in defendant Sally Schofield's home where the child was subsequently neglected and physically abused. (*Id.* ¶ 86.) The abuse began to occur within days of the child's placement in the Schofield home, and continued over a period of months culminating in her death in January, 2001. (*Id.* ¶ 88.) During the period of her abuse, the child reported the assaults to several people. (*Id.* ¶ 89.)

The complaint alleges that Irwin failed to meet many of his duties as a GAL. For example, Marr alleges that Irwin performed no independent investigation of the allegations made against her by the other defendants. (*Id.* ¶¶ 74, 305.) Further, he conducted no independent investigation of the placements of the child in either the first foster home or in Schofield's home. (*Id.* ¶ 75.) From August 2000, until January 31, 2001, Irwin met with the child only once in the presence of defendants Schofield and Peters, the social worker/caseworker. (*Id.* ¶ 83.) During the same time frame, Irwin only once went to the Schofield residence and at that visit he saw the child only briefly. (*Id.* ¶¶ 85, 305.) At no time did defendant Irwin meet with the child in a private or in a neutral setting so

---

1. The complaint in this case is sixty-seven pages long containing 481 numbered paragraphs and twenty-seven separate causes of action. Defendant Irwin is identified in ¶ 8 and the facts pertaining to him are set forth in ¶¶ 69—99. The causes of action pursuant to § 1983 are set forth in counts I—X of the complaint and Irwin is a named defendant in counts VI, deprivation of civil rights—conspiracy, and count X—deprivation of civil rights. Additionally counts I—III and count V plead civil rights deprivations by defendants without naming any individuals. Count VII also mentions defendants, but names only Westburg. I assume that Irwin is a defendant under all of these causes of action. The second set of causes of action involves state law claims. Irwin is clearly a named defendant in count XI, professional malpractice, count XIII, gross negligence, count XVI, wrongful death, and count XX, civil conspiracy. Less clear is whether Irwin is a named defendant in count XVII, intentional infliction of emotional distress, and count XVIII, slander/libel because these counts again simply say defendants, meaning more than one presumably. I will for purposes of this motion treat Irwin as a named defendant in these two counts as well.

that he might obtain the child's report of her progress in foster care, nor did he meet with her prior to court hearings. (*Id.* ¶¶ 79, 81, 84.) Irwin was in regular contact with Schofield by telephone. (*Id.* ¶ 124.) The complaint alleges that Irwin was aware of the risk of harm attendant to the failure to monitor and control a child's progress while in state care, but Irwin failed to take easily available measures to address that risk. (*Id.* ¶¶ 95, 96.) Prior to the child's death, Irwin did not ascertain that she was being abused in Schofield's home or, if he did so ascertain, he did not investigate nor report any allegations of abuse. (*Id.* ¶ 90.) Additionally, Irwin failed to discover or he ignored the fact that Schofield was not a licensed foster parent at the time the child was placed with her. (*Id.* ¶ 77.) Marr alleges that Irwin knew or should have known and failed to report that the child was abused in the first foster home placement. (*Id.* ¶¶ 76, 293, 305.) The complaint alleges that by electing not to carry out the mandatory duties of a guardian ad litem, Irwin operated outside of the scope of his duties and not only violated Logan Marr's fundamental rights, but was the direct and proximate cause of her death. (*Id.* ¶¶ 295–296.)

In addition to Irwin's omissions, the complaint alleges that Irwin acted outside the scope of his authority by becoming involved with the placement of Marr's child. According to the complaint, prior to Irwin's involvement in the Marr proceedings Irwin knew and befriended Schofield, who was actively performing as a DHS caseworker. (*Id.* ¶¶ 101, 102, 118.) Marr alleges Irwin took actions to assist Schofield in adopting Marr's child. At the time the child was placed in her home, Schofield was the adoption caseworker for Logan Marr. (*Id.* ¶ 120.) Schofield announced she intended to adopt the child and subsequently retired from her position on November 30, 2000, due to her desire to foster and adopt the child. (*Id.* ¶¶ 119–

121.) Irwin and Peters (the social worker/caseworker) were allegedly aware of Schofield's intentions to adopt the child and conspired to help in the termination of Marr's parental rights through negative reports, statements, and testimony to the court. (*Id.* ¶¶ 122, 125.)

The complaint further alleges that shortly after the child was placed in Schofield's home, Karen Westburg, the Director of the Bureau of Child and Family Services discovered that the placement violated the Department regulations, state law, and the Maine Title IV–E State Plan because Schofield, at that time, was a DHS caseworker. (*Id.* ¶¶ 7, 103.) Consequently, Westburg intended to place the child in a "suitably licensed" foster home. (*Id.* ¶ 103.) When Irwin was informed of Westburg's intention to move the child, he informed Peters and/or Schofield that he would contact the court in an attempt to prevent a new placement. (*Id.* ¶¶ 104–106.) Irwin contacted Richard Golden, Esq., counsel for Marr at the time in the child protective action, regarding the scheduled meeting with then presiding District Court Judge John B. Beliveau. (*Id.* ¶ 108.) Golden was unable to attend the meeting due to previous commitments and informed Irwin that he fully expected Irwin to reschedule the meeting. (*Id.* ¶ 108.) Despite Golden's request, Irwin attended the scheduled meeting with Judge Beliveau. (*Id.* ¶¶ 107, 311.) Irwin informed Judge Beliveau that he wished the child would not be moved despite the fact that the current placement was with a DHS caseworker. (Id. ¶¶ 107, 109.) During the meeting, Irwin contacted Westburg informing her that he would bring an action for a restraining order should she attempt to place the children in a different foster home. (*Id.* ¶ 110.) He further informed her that Judge Beliveau would grant his request. (*Id.* ¶¶ 110, 311.) As a result of this communication, Westburg re-

frained from moving the child and allowed her to continue residing with Schofield. (*Id.* ¶ 112.) The complaint alleges Irwin, in violation of a GAL rule, did not promptly report to the parties in the child protective action the outcome and the substance of the *ex parte* communication with the judge. (*Id.* ¶¶ 114, 115, 310.) Judge Beliveau does not recall ever stating or suggesting he would be involved with ordering DHS to make or keep an illegal or improper placement of children in an unlicensed foster home. (*Id.* ¶ 111.) The judge stated, "I can't demand any placement like that anyway. I have no authority. All I can say is they are sent to the Department of Human Services." (*Id.*)

Marr alleges that Irwin's acts and omissions were done intentionally and/or with malice and in bad faith. (*Id.* ¶¶ 126, 300.) Her complaint further states that Irwin did not possess the requisite constitutional, statutory, or lawful authority to decide to act outside of the scope of his duties as a GAL and commit such a breach of Marr's rights and that Irwin's conduct was the direct and proximate result of the child's death. (*Id.* ¶¶ 296, 298.) According to the complaint, Logan Marr, as an involuntary dependent in the custody of the DHS and in its substitute care program, had a clearly established, fundamental Fourth Amendment and Fourteenth Amendment (substantive due process) interest in safe conditions, personal security, and bodily integrity, including a right to reasonable safety of which a reasonable guardian ad litem would have known. (*Id.* ¶ 292.) Additionally, Marr alleges that she and the child had a fundamental right to the due process protections that the GAL's independent investigation would have provided. (*Id.* ¶ 97.) Further, they have a right to a good faith performance of the GAL's duties that they did not receive. (*Id.*) Marr alleges that Irwin's breach amounts to a denial of Logan Marr's right to life under the Fourth and Fourteenth Amend-

ments and to a denial of Marr's procedural due process rights under the Fourteenth Amendment. (*Id.* ¶ 299.)

### Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the claimant's favor, and determine whether the complaint, when viewed in the light most favorable to the claimant, sets forth sufficient facts to support the challenged claims. *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 30 (1st Cir.2000); *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998.) All facts are construed in the light most favorable to plaintiff, although the Court need not credit conclusory allegations or indulge unreasonably attenuated inferences. *See Ticketmaster–NY, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994). A motion to dismiss should be granted only if it clearly appears that the plaintiff cannot recover on any set of facts. *Gonzalez–Bernal v. United States*, 907 F.2d 246, 248 (1st Cir.1990).

In ruling on a motion to dismiss, the Court may consider any documents central to the plaintiff's claim, official public records, and documents sufficiently referred to in the complaint without converting the matter into a motion for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir.1993). A defendant seeking to successfully maintain a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on a claim of absolute immunity bears the burden of showing that public policy requires absolute immunity for the particular individual because the alleged conduct involves duties that require the exercise of discretion in a manner functionally comparable to that of a judge. *Butz v. Economou*, 438 U.S. 478, 506, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Absolute immunity affords a de-

fendant complete protection from liability for damages and defeats a cause of action at the outset. *Horwitz v. State Bd. of Med. Exam'r of Colo.*, 822 F.2d 1508, 1512 (10th Cir.1987), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987).

## Discussion

Marr alleges various claims against Irwin, including civil rights violations pursuant to section 1983 (Counts I–X) and various state claims, including civil conspiracy (Count XX). The remaining state claims allege malpractice, gross negligence, wrongful death, intentional infliction of emotional distress, and slander/libel (Counts XI, XIII, XVI, XVII, and XVIII respectively). In his Motion to Dismiss, Irwin argues that the claims against him arise out of the performance of his duties as a court-appointed guardian ad litem therefore he has absolute or qualified immunity and is not liable. Further he asserts that the claims fail to state a claim for which relief can be granted.

### A. Guardian Ad Litem Immunity in the Context of 42 U.S.C. § 1983 Claims

■ Counts I through X allege violations of 42 U.S.C. § 1983, providing a federal remedy against state actors for conduct that violates federal rights. *See Willhauck v. Halpin*, 953 F.2d 689, 703 (1st Cir.1991). A cause of action under § 1983 must allege both the existence of a federal constitutional or statutory right, and some deprivation of that right as a result of defendant's actions under color of state law. *Id.* The complaint alleges Irwin acted under color of state law, a point which Irwin concedes due to his involvement as a court-appointed guardian ad litem.[2] (Compl. ¶ 69; Mot. to Dismiss at 7–8.) However, Irwin asserts his appointment as guardian ad litem entitles him to quasi-judicial immunity from the claims against him.

■ Most government officials are entitled to only qualified immunity, but officials performing judicial, legislative, or prosecutorial functions have been afforded absolute immunity. If absolute immunity attaches, it applies however erroneous the act or injurious its consequences. *Cleavinger v. Saxner*, 474 U.S. 193, 199–200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citation omitted). Furthermore, if absolute immunity attaches to the acts, the motives of the official do not matter and allegations of improper motive cannot defeat the claim of immunity. *Id.* The Supreme Court has adopted a "functional" approach to absolute immunity and the question of whether a particular individual will have absolute immunity will depend on the function performed by that official in a particular context. *Forrester v. White*, 484 U.S. 219, 228–29, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (judge has absolute immunity only when acting in judicial, as opposed to administrative, capacity). Judges have absolute immunity from civil rights suits so long as the judges act within their judicial capacity. *See Hughes v. Long*, 242 F.3d 121, 125 (3rd Cir.2001) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) and *Pierson v. Ray*, 386 U.S. 547, 553–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

**2.** Defendant concedes that he was acting under color of state law, thus this Court's decision in *Snyder v. Talbot*, 836 F.Supp. 19 (D.Me.1993) is not dispositive. *See Snyder v. Talbot*, 836 F.Supp. 19, 24 (D.Me.1993) (finding that the GAL was not a state actor for the purpose of resolving civil rights conspiracy claim brought against plaintiff's own private attorney.) Unlike the facts in *Snyder*, where the GAL was appointed under 18–A M.R.S.A. § 1–403(4) for a limited purpose, the present appointment was made pursuant to a protective proceeding under 22 M.R.S.A. § 4005. In a separate unpublished order this Court dismissed all claims against the GAL in *Snyder*, finding the GAL was entitled to absolute immunity. *Id.* at 27.

 Absolute judicial immunity attaches when a GAL performs certain delegated duties because of the intimate relationship between the GAL and the court in the judicial process. *See Hughes,* 242 F.3d at 127 (listing cases and holding that defendants were entitled to absolute immunity because their functions were similar to those of a GAL). In essence, the judicial immunity applicable to the appointing judge extends to the acts of the GAL thereby providing the GAL with what is called quasi-judicial immunity, a form of absolute immunity. In determining whether the guardian's conduct is protected by absolute immunity, the courts engage in a "functional approach" analyzing the "nature of the duties performed and whether they are 'closely associated with the judicial process.'" *See Cok v. Cosentino,* 876 F.2d 1, 3 (1st Cir.1989) (quoting *Cleavinger,* 474 U.S. at 200, 106 S.Ct. 496). Conduct intimately related to the judicial process justifies the extension of quasi-judicial immunity. "Quasi-judicial immunity extends to those persons *performing tasks* so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994)(emphasis added). Absolute immunity is granted to officials performing functions analogous to those of judges if "(a) the officials' functions [are] similar to those involved in the judicial process, (b) the officials' actions [are] likely to result in damages lawsuits by disappointed parties, and (c) there [are] sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Moore v. Gunnison Valley Hosp.,* 170 F.Supp.2d 1080, 1085 (D.Colo.2001) (citing *Horwitz,* 822 F.2d at 1513). When a defendant shows that these three elements have been met, he has met his burden of showing that public policy demands the application of absolute immunity. *See Bettencourt v. Bd. of Registration in Med. of Mass.,* 904 F.2d 772, 784 n. 15 (1st Cir. 1990).

In asserting his entitlement to absolute immunity, Irwin argues that all of his actions were an integral part of the ongoing judicial process and were directly related to the position, duties, work, and responsibility of a guardian ad litem. (Def's Mot. to Dismiss at 9.) Irwin argues that as a court-appointed GAL he carried out a function normally reserved for the court and he specifically states that this included the undertaking of an investigation and study to determine what custody arrangement would be in the best interests of the child. (*Id.* at 8.) Further, he suggests there is a heightened likelihood of retaliatory litigation in the function of a GAL and argues that harassment by unfounded litigation could cause a deflection of a GAL's duties, trust, and responsibility and affect the GAL's independence of judgment. (*Id.* at 9 n. 12.) Although Irwin does not explicitly address the third point regarding sufficient safeguards, Irwin cites *Gray v. Poole,* 243 F.3d 572 (D.C.Cir.2001), and states that the reasons absolute immunity applied to the prosecutor in that case are equally applicable to a GAL in this case. (Def's Mot. to Dismiss at 12.) The court in *Gray* found that "the legal remedies already available to those involved in child neglect proceedings provide sufficient checks on agency zeal." *Gray,* 243 F.3d at 577 (citing *Butz,* 438 U.S. at 516, 98 S.Ct. 2894) (quotations omitted). Additionally, the court stated that the plaintiff may challenge the legality of the district attorney's actions "directly in those proceedings and may raise claims of unconstitutional conduct both there and on appeal." *Id.*

 Judicial immunity has been extended to protect the GAL's acts of investigating, meeting with children, making reports and recommendations to the court, and testifying in court. *See Gardner v. Parson,* 874 F.2d 131, 146 (3rd Cir.1989) (stat-

ing that under the functional approach a "guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court...."). In *Cok*, the First Circuit found that a GAL, responsible for gathering information, preparing a report, and making a recommendation to the court, functioned as an agent of the court and therefore was entitled to absolute immunity for these acts. *See Cok*, 876 F.2d at 3. The same holds true here. As alleged in the complaint, Irwin's duties included meeting with the child, investigating, and reporting to the court the best interests of the child. (Compl.¶¶ 73, 78, 80, 93.) In performing these duties, Irwin carried out a function that was "integral to the judicial process." *See Hughes*, 242 F.3d at 127–128 (finding that functions of gathering information, conducting an evaluation, and making a recommendation to aid the court in a custody determination are integral to the judicial process). The public policy reasons Irwin stated for the extension of absolute immunity to these functions have been accepted as valid. *See, e.g., Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984); *Scheib v. Grant*, 814 F.Supp. 736, 740–741 (N.D.Ill.1993). Thus, Irwin is entitled to absolute quasi-judicial immunity for claims against him in the performance of these acts as a GAL.

■ A guardian ad litem acting outside the scope of his/her authorized duties is not protected by quasi-judicial immunity for those acts. *Cok*, 876 F.2d at 3. Marr first alleges that Irwin acted outside the scope of his duties by choosing *not* to comply with his duties as a GAL. In support of this allegation, Marr points out instances where the GAL did not meet statutory requirements or GAL guidelines. (Compl.¶¶ 74–85.) These factual allega-

tions however merely state Marr's dissatisfaction with the manner in which Irwin carried out his appointed duties, rather than alleging instances in which Irwin performed outside the scope of his authorized duties. Dissatisfaction with the manner in which the GAL performed his delegated duties does not remove the protections of quasi-judicial immunity. *Cok*, 876 F.2d at 3–4. The complaint also alleges that Irwin provided "negative reports, statements, and testimony to the court" apparently regarding Marr. (Compl.¶ 125.) However, testifying and making reports and recommendations to the court are within the scope of Irwin's duties as a GAL, therefore he is protected by absolute immunity in the performance of these duties. *See Cok*, 876 F.2d at 3 (stating that absolute immunity would fail to attach only when the GAL performs acts clearly outside the scope of his or her jurisdiction and that allegations of malice or bad faith will not defeat the protection of the immunity).

■ Marr further alleges that Irwin used his position as a GAL and went beyond the scope of his authority as a GAL to affect DHS's placement of the child. (Compl. ¶¶ 103–113; Pl.'s Opp'n to Mot. to Dismiss at 9.) The issue becomes whether Irwin's authorized duties included the authority to attempt to intercede with the court regarding the child's placement. Although the complaint does not expressly state the statutory provision under which the court appointed Irwin as a GAL, the complaint specifically refers to the duties of a GAL pursuant to 22 M.R.S.A. § 4005. (Compl.¶¶ 303, 310.) The child protective proceeding giving rise to Irwin's appointment (*Id.* ¶¶ 2, 9) and Marr's citation to § 4005 support a conclusion that Irwin was appointed under 22 M.R.S.A. § 4005(1)(A).[3] Section 4005 does not state whether a GAL has the authority to be

---

3. The other provision under which a GAL

might be appointed, Section 1507 of Title 19–

involved in the placement of the minor. In their motions, both Marr and Irwin rely on the Rules for Guardians ad Litem and its incorporated Appendix A: The Standards of Practice for Guardians ad Litem in Maine Courts. The Rules and the Standards are applicable to GAL's appointed pursuant to Title 19–A and Title 22. (*See* Ex. attached to Def.'s Mot. to Dismiss.)[4] The Standards govern the duties and role of court-appointed GALs and expressly state that the relief GALs may request for the child includes "restraining or enjoining a change of placement." *See* Standards of Practice for Guardians ad Litem § 3.6(4). Thus, seeking to restrain Westburg from moving the child is within the scope of Irwin's duties as a GAL.

The remaining conduct at issue is Irwin's involvement with DHS's placement of the child. The determination of whether particular conduct is protected by absolute immunity requires application of the functional approach in which the Court analyzes the nature of the duties performed and their association with the judicial process. *Cok*, 876 F.2d at 3. In order to safeguard the interests of the child, the Maine District Court exercised its statutory obligation to seek the assistance of a guardian ad litem. *See* 22 M.R.S.A. § 4005(1)(A). *See also Kennedy v. Maine*, 1999 ME 85, ¶ 10, 730 A.2d 1252, 1256 ("In fulfilling its duty to the court, the guardian is 'to assist the court in its role as parens patriae to determine the best interests of the children,'" quoting *Miller v. Miller*, 677 A.2d 64, 69 n. 8 (Me.1996)). The

guardian's acts in furtherance of this goal are an integral part of the judicial process. *See Kurzawa*, 732 F.2d at 1458 (stating that GAL must act in best interests of the child and such a position places the GAL "squarely within the judicial process to accomplish that goal."). By seeking to restrain a change of placement, Irwin was carrying out a delegated function. *See id.* A request for the court to restrain or enjoin a change of placement involves the judicial process and could invoke retaliatory litigation against the GAL. Further, sufficient safeguards exist to protect against unconstitutional conduct as the court has discretion to deny the GAL's request for such an order, the plaintiff can challenge the order, and the court has the power to remove the GAL. *See* Standards § 1.3 (stating that a court may discharge a GAL for failure to maintain independent representation of the best interests of the child and/or for failure to perform the GAL's duties faithfully); Rules II(3)(B) (GAL is subject to ongoing oversight by the court and may be removed). Based on the foregoing, Irwin should be protected for his involvement in seeking to restrain a change of placement because his duties as a GAL include the authority to do so. *Cf. McCuen v. Polk County, Iowa*, 893 F.2d 172, 174 (8th Cir.1990) (finding absolute immunity applied to GAL facing a § 1983 claim for signing and helping to prepare a motion for an order to stay proceedings so that child would not reside with parent).

Marr alleges that in seeking to restrain DHS's new placement of the child, Irwin

A, does not relate to the present matter as it applies to the appointment of GALs in contested divorce proceedings whereas 22 M.R.S.A. § 4005 relates to GALs appointed in child protection proceedings.

4. The Supreme Judicial Court of Maine adopted *Rules for Guardians ad Litem* on November 9, 1999, applicable to all GALs appointed after March 1, 2000. Appendix A,

adopted as part of the Rules, provides *Standards of Practice for Guardians ad litem*. Marr references these standards in her complaint, *see e.g.* ¶ 303 (Standard 2.2 requiring certain meetings with the child) and Irwin has attached a copy of the Standards to his motion. As a public document the Standards are properly before the Court on the motion to dismiss. *See Watterson*, 987 F.2d at 3–4.

threatened and intimidated DHS. The complaint reveals that this conduct occurred when Irwin telephoned Westburg *during* his *ex parte* meeting with a Maine District Court judge. (Compl.¶ 110.) Irwin informed Westburg that he would seek a restraining order if she attempted to move the child and further stated that the judge was willing to grant such an order. (*Id.* ¶¶ 110, 310.) As Marr's complaint points out however, Irwin had a duty to promptly report the substance of the *ex parte* communication. (*Id.* ¶ 310.) *See also* Standard § 6.2. Again, the complaint does not allege actions outside the scope of Irwin's duties as a GAL, but merely alleges Marr's dissatisfaction with how Irwin carried out his duties. Neither Marr's dissatisfaction with the manner in which Irwin carried out his duties nor Marr's accusation of malice removes the protections of quasi-judicial immunity. *See Cok*, 876 F.2d at 3–4.

In sum, Marr's complaint does not allege facts indicating that Irwin acted beyond the scope of his duties as a GAL. There are allegations that Irwin acted in bad faith or with improper motives because ultimately he wanted to assist Schofield with her plans to adopt the child, but those allegations do not serve to defeat the claim of absolute immunity because what Marr alleges that Irwin did all relates to his duties as a GAL. A GAL is entitled to absolute immunity under § 1983 from any suit for damages based on the performance of his duties within the scope of his appointment. I find that Irwin has established that the allegations in the complaint pertaining to him relate to conduct within the discretionary authority of a GAL and therefore Irwin is entitled to dismissal of Counts I–X.

## B. Absolute Immunity and State Law Claims

The doctrine of absolute immunity for judicial officers is not solely a creation of federal constitutional precedent. In fact the Supreme Court has held that the absolute immunities recognized under § 1983 are "well grounded in history and reason" and predate the Civil Rights Acts of 1871. *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The Maine Law Court has acknowledged the common law precedent that gives rise to a GAL's quasi-judicial immunity. *Kennedy*, 1999 ME 85, ¶ 10, 730 A.2d at 1256, n. 10. The Maine Legislature has now codified that common law immunity as it pertains to GALs in child protective proceedings. *See* 22 M.R.S.A. § 4005(1)(G). ("A person serving as a guardian ad litem under this section acts as the court's agent and is entitled to quasi-judicial immunity for acts performed within the scope of the duties of the guardian ad litem.")

### 1. Malpractice Claim

Count XI alleges professional malpractice against Irwin in his actions taken as an attorney. This claim alleges violations of Irwin's statutory duties as a GAL (Compl.¶¶ 303–305), a violation of a duty to the child and Marr to perform legal services for the child's best interests with the standard duty of care (*Id.* ¶¶ 307–308), a violation of the Maine Bar Rules by engaging in *ex parte* contact with the Maine District Court judge (*Id.* ¶¶ 309, 311), and a violation of Standard 6.2 for failing to promptly disclose the nature of the *ex parte* contact to the parties or their counsel. (*Id.* ¶ 310.) Irwin argues that this claim fails to state a cause of action because he was acting as a GAL, not as an attorney.[5] (Mot. to Dismiss at 4.) A GAL

---

**5.** The parties disagree as to the correct interpretation of the Guardians ad Litem Rule (3)(A), which states, "If the Guardian is an

attorney, she or he acts in his or her capacity as a guardian, rather than as an attorney, and

who also happens to be an attorney may act in both capacities depending upon the proceedings. *Kennedy*, 1999 ME 85, ¶ 10, 730 A.2d at 1256 n. 9. In this case, Irwin was appointed pursuant to 22 M.R.S.A. § 4005 following the initiation of a child protective proceeding. (Compl.¶¶ 2, 9.) Maine law clearly states that "[a] person serving as a guardian ad litem under [§ 4005] acts as the court's agent . . ." *See* 22 M.R.S.A. § 4005(1)(G). Further, both the Standards and the Rules for Guardians ad Litem expressly state that the guardian ad litem is a quasi-judicial officer of the court. *See* Standards 1.1; Rules I(B) (stating that GAL acts as a judicial officer, not as a member of his or her underlying profession). Thus it is clear that under Maine law Irwin acted as an "arm of the court" and not as counsel appointed solely to represent the child in a proceeding. Further, the Rules for Guardians ad Litem expressly state that a GAL is "entitled to quasi-judicial immunity from liability for actions undertaken pursuant to their appointments, [the] Rules or the Standards of Practice for Guardians ad Litem." *See* Rules III. As discussed above, Irwin acted within the scope of his duties as a GAL. Therefore Irwin's acts are protected by quasi-judicial immunity. This statutory protection for authorized conduct should not be circumvented by a claim against a GAL disguised as a malpractice claim. As a final note, in regard to Marr's allegation that Irwin owes a duty to Marr arising from his appointment as a GAL, the Maine courts clearly state that no such duty exists to the parent. *See Gerber v. Peters*, 584 A.2d 605, 607 (Me.1990) (stating that an attorney-client relationship is not created between the GAL and the minor's parent and that the GAL's duty is to the court).

To the extent Marr's malpractice claim relates to the *ex parte* communication between Irwin and the Maine District Court judge, the Standards state that such contact is permissible so long as the GAL or the court promptly discloses the nature of the *ex parte* contact to the parties or their counsel. *See* Standards § 6.2; (Compl.¶ 310.) The facts alleged in the complaint state that Marr's counsel was informed of the meeting and its nature prior to its occurrence. (Compl.¶ 108.) Further, *during the meeting* with the judge, Irwin telephoned Westburg and informed her of the substance of the meeting. (*Id.* ¶ 110.) The facts alleged in the complaint do not appear to me to amount to a violation of Standard 6.2, but if they did amount to such a violation the allegations still would not involve conduct outside the scope of a GAL's delegated duties. The timing of the notice to the other parties required under the rules would squarely be within the discretionary duties of the GAL.

Based on the foregoing, Count XI should be dismissed.

### 2. Claims for Negligence, Wrongful Death, Emotional Distress, Slander/Libel, and Civil Conspiracy

The conduct at the root of the claims in Counts XIII, XVI, XVII, XVIII, and XX relates to Irwin's actions as described and discussed above. The complaint alleges no additional facts. As previously explained, the acts at issue were taken pursuant to Irwin's appointment as a GAL and are within the scope of his duties. Under Maine law, Irwin is immune from suit in the performance of his duties as a GAL. *See* 22 M.R.S.A. § 4005; Rules for Guardians ad Litem III. I do note that claims of

information he or she receives is not subject to the attorney-client privilege, but is instead governed by Standard 6.2." *See* Rules for Guardians ad Litem II(3)(A). As will be dis-

cussed, I find the answer to the controversy in 22 M.R.S.A. § 4005 and Rules for Guardians ad Litem I(B).

slander/libel can defeat absolute immunity if it is alleged that the statements were made outside the scope of quasi-judicial functions, such as to the media or press. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 277–278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (finding that a prosecutor's allegedly false statements to the media regarding the indictment of murder defendant are not related to the judicial process and thus are not entitled to absolute immunity from § 1983 liability, however prosecutor may be entitled to qualified immunity which is afforded to other executive officials who deal with the press). None of the allegations pertaining to Irwin relate to any statements made other than in the context of the judicial proceedings.

Count XX alleges a claim of civil conspiracy involving Irwin, Schofield, and Peters. This claim alleges Irwin and the others conspired to influence the child protective proceeding in the Maine District Court in order to further Schofield's adoption of the child and to assist in the termination of Marr's rights. (Compl.¶ 408.) No additional factual allegations are set forth in this claim beyond the facts discussed thus far. Having determined that Irwin's acts were within the scope of his authority, this claim of conspiracy does not remove the protective immunity. *See Cok,* 876 F.2d at 3 (stating that a claim of conspiracy does not remove the protection of quasi-judicial immunity). *See also Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986) (holding that "a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors.").

█ Moreover, under Maine law, a civil conspiracy claim requires proof of the commission of an underlying tort. *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell,* 1998 ME 70, ¶ 8, 708 A.2d 283,

286. No underlying tort has been alleged here, as all such claims are barred by absolute immunity.

## Conclusion

I recommend that the Court **GRANT** the motion to dismiss Counts I through XI, XIII, XVI, XVII, XVIII, and XX to the extent they relate to Irwin.

## *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated May 9, 2002.